PELTON WATER-WHEEL CO. v. ABNER DOBLE CO.

(Circuit Court, N. D. California. November 20, 1905.)

No. 13,216.

PATENTS—INFRINGEMENT—WATER-WHEEL BUCKETS.

The Dodd patent, No. 454,638, for a water-wheel bucket, is for an improvement on the buckets of the prior art, and not of broad scope. It is not infringed by the bucket of the Doble patent, No. 633,184, which is also an improved form of bucket, but lacks essential elements of the Dodd invention.

In Equity. On final hearing.

N. A. Acker and Wm. F. Booth, for complainant.

J. H. Miller and Frohman & Jacobs, for defendant.

MORROW, Circuit Judge. This is a suit in equity for the infringement of United States letters patent No. 454,638, granted June 23, 1891, for an improved water-wheel bucket, to Willis G. Dodd, assignor to the complainant. A full copy of the letters patent claimed to be infringed, is as follows:

"My invention has relation to certain new and useful improvements in water-wheels, and more particularly to that class known as 'hurdy-gurdy' wheels, which derive their power from a stream or column of water delivered against buckets secured to the periphery thereof, as will be hereinafter more fully set forth in the drawings, described and pointed out in the specification.

"From practical experiments it has been demonstrated that by the use of the present wheels a large per cent. of the water-pressure adapted to operate the same is lost by being expended for the purpose of forcing or driving the utilized water from the buckets. The retarding of the utilized water in its efforts to escape from the buckets is due to the peculiar construction of the buckets, which precludes the outflow of the same in its natural flow.

"The object of the present invention is to allow for a more complete utilization of the direct force of the water, so as to obtain a greater or higher percentage of power for the rotation of the wheel than has heretofore been accomplished.

"My invention consists in constructing the buckets on lines or curves corresponding to the natural flow of the water (created by reason of the centrifugal force of the wheel and reaction of the water), so as to allow for a perfect, free, and unobstructed flow or discharge of the water from the buckets, thereby obviating liability of retarding the rotation of the wheel by having a partial force of the stream diverted for other purposes than that of impacting against the walls of the buckets, so as to impel rotation of the wheel.

"Referring to the drawings forming a part of this application, wherein similar letters of reference denote corresponding parts throughout the entire specification and several views, Figure 1 is a perspective view of the wheel provided with my improved buckets; Fig. 2, a top plan view, showing one of the buckets; and, Fig. 3, a bottom plan of the bucket.

"The letter A indicates the water-wheel proper, which has secured to the periphery thereof water-receiving buckets, B. If so desired, the water or receiving buckets may be formed integral with the wheel. By preference, however, I form each bucket separate, and bolt or otherwise secure the same to the periphery of the wheel. Each bucket has its bottom formed into two curves, C, C', which meet in the central apex, D. The sides, E, E, are formed upon an incline and slightly diverge from the inclined rear wall, E', to the front of the bucket, so as to increase the width at the front thereof. The front wall, E², of the bucket I form in the shape of a sigmoid, which forms the discharge for each of the curved bottom sections at c, c', as clearly shown in the drawings, thus allowing the utilized water to be discharged in its natural curves, and at an angle from the plane of rotation in a free and unobstructed flow.

"Heretofore the buckets have been constructed upon such curves as to allow of the utilized water being discharged at the sides of the wheel, which, having reactionary force, while being discharged from the buckets, tends to retard rotation thereof, and furthermore necessitates the appropriation of partial force of the stream in order to overcome and compel the discharge of the utilized water from within the buckets. My bucket, however, I construct upon such curves as to allow for the discharge of the water in its natural curves, utilizing therefor the centrifugal force, instead of the force of the impact-stream. By thus constructing the buckets upon natural curves, I obviate any reaction of the water upon itself, and consequently allow the wheel to utilize the greatest possible amount of the reactionary force of the water. The buckets are so placed upon the periphery of the wheel that the

discharged water of one in no manner acts to impede the rotation of the wheel by contact with the following bucket or any other portion of the wheel.

"Having thus described my invention, what I claim as new, and desire to secure protection in by letters patent of the United States, is:

"(1) A bucket or float for impact water-wheels, having the curved bottoms meeting at an apex united with a sigmoidal front wall, thereby forming continuous discharge sides for the utilized water, as and for the purpose set forth.

"(2) A water-wheel bucket having the curved bottom meeting at a central apex and provided with the sigmoidal front wall gradually increasing the discharge sides from top to bottom and having its discharges below the line of impact, as and for the purpose set forth."

An infringement of both claims is charged in the bill of complaint. The defendant's device is described in United States letters patent No. 633,184, granted on September 19, 1899, to William A. Doble. In his application for a patent Doble described his bucket as follows:

"My improvements consist in forming such buckets with modified or elliptical instead of circular curves, so as to reverse the direction of the impinging stream on the lines of a true hydraulic curve, and thus secure the greatest value of the energy of the impinging stream in its impact on the bucket and of the reactive effect of the reversed stream. This is secured by causing the flow of the water in the buckets to be accomplished with the least possible disturbance of the stream and avoidance of eddy-currents or irregular flow, as is the result when buckets for this class of wheels are not designed as herein shown. By securing this flow free from eddy-currents in the buckets the efficiency of the wheel is materially increased, none of the energy in the stream being wasted or diverted by such losses. This has been demonstrated most successfully in the buckets constructed according to my methods, the increased efficiency gained having been very materially above the best results secured with buckets of other form and as hitherto constructed. In addition to this the regular flow free from eddy-currents in the buckets has lessened eroding or wearing effect, securing a much greater endurance of the buckets, reducing the cost of maintenance accordingly. This latter is of great importance where wheels are working under high pressures or when the water contains particles of grit or sand."

After stating that the constructive features of the bucket are an improvement on a previous invention, he explains the features of his improvement by reference to the drawings, from which it appears that the surface cavities of the buckets have curves of an ellipsoidal form, which guide and direct the flow of the water impinging on the buckets, producing a gradually increasing deflection until the direction of flow is reversed. And referring to the dividing wedge in the bucket standing in the plane of the revolution of the wheel, for the purpose of dividing the impinging stream into two equal parts, he says that this dividing-wedge is so cut away at the bottom by a clearance-passage that it enters the jet or stream in a manner to avoid disturbance or distortion of the water which has not previously come in contact with any part of the bucket. "In this manner," he says, "there is no division or disturbance of the stream except in the plane of the wheel's rotation, and it is to avoid this that the ends of the buckets are cut away at the bottom, omitting the usual end wall or other obstruction that enters and cleaves the stream transversely to the dividing-wedge and directs it in various and devious ways before it is divided by this wedge." His claims cover the various elements of a bucket thus constructed.

It appears that prior to the Dodd patent the Pelton bucket represented the highest state of the art relating to buckets for impulse water-wheels. It was in general form box-shaped, with a central wedge or splitter in the line of the revolution of the wheel. The effect of this wedge or splitter was to divide the water of the stream impacting on the apex thereof, and to cause the same to flow smoothly down the inclined faces of the wedge or splitter, and to spread out in fan shape, passing over the sides of the bucket. This wedge or splitter appears to have been considerable of an addition to the previous art, and is present in all later devices. But the Pelton bucket had some defects: First, it had a square boxlike shape which prevented a smooth and natural flow of the water through the bucket; second, the water was discharged over the sides of the bucket, and not downward in its natural course. To these defects the defendant has added a third, namely, the transverse entering lip of the lower or outer end of the bucket. The Dodd device was designed to remedy these defects, and for that purpose he claimed to have constructed his bucket "upon such curves as to allow for the discharge of the water in its natural curves, utilizing therefor the centrifugal force instead of the force of the impact stream." In this construction the sides are formed upon an incline, and slightly diverged from the inclined rear wall to the front of the bucket, so as to increase the width at the front. This front wall he formed in the shape of a sigmoid, which forms the discharge for each of the curved bottom sections, as shown in the drawings, "thus allowing," he says, "the utilized water to be discharged in its natural curves and at an angle from the plane of rotation in a free and unobstructed flow."

The meaning of this description of the function of the device appears to be that the bucket is constructed upon such lines that the water projected against the bucket is discharged downward in the direction of its natural flow, instead of over the sides, and that the lower part of the bucket is extended in sigmoidal shape with curved lines, instead of with boxlike angles, allowing a free and unobstructed flow or discharge of the water from the buckets. His first claim is for a bucket having the curved bottom sections meeting at an apex *united with a sigmoidal front wall.* His second claim is for a bucket having the curved bottom meeting at a central apex, and *provided with the sigmoidal front wall, gradually increasing the discharge sides from top to bottom, and having its discharges below the line of impact.* The elements claimed to be new are: First, the curved bottoms uniting with a sigmoidal front wall; second, the sigmoidal front wall gradually increasing the discharge sides from top to bottom; and, third, the discharge surfaces formed by the sigmoidal front wall shall be such as to permit of discharging over such surfaces below the line of impact. For the purpose of this case these elements and claims are all concisely stated in the proposition contended for by complainant— that Dodd added to a water-wheel bucket of the divided wedge type *a front wall with rounded corners prolonged beyond the wedge point.* With a bucket of this shape before us do we find in the Doble bucket a construction that infringes the Dodd patent?

The court has been furnished with a very interesting history of the water-wheel bucket, and the theories that have been entertained from time to time concerning the shape of the ideal bucket that would receive and transmit to the wheel the force of the stream of water with the least possible loss. From this history and from these theories, it appears that the present buckets have gone through a process of evolution in which the development has been gradual, and the differences in form have at times been of such a slight character that the inexperienced would fail to understand their practical importance. Hence we find in this case that the complainant's bucket made but a slight change in the form of its predecessors, but it is claimed that the change in results was highly important and beneficial. And so with respect to the defendant's bucket. It is claimed that the cutting away of a small section of the front wall and a change in the form of the interior cavities of the bucket have resulted in the production of a greatly improved device which absorbs the force of the stream upon a different principle from that in operation in the complainant's bucket, and with very satisfactory results. It follows that, while these improvements are narrow, they must all be considered in the same light and receive the same consideration. Neither of the buckets involved in this action was a pioneer in the art to which they relate. They are both claimed to be improvements, although there is some controversy as to whether defendant's bucket is in fact an improvement upon complainant's device. But we need not pursue that question. We must determine this question of infringement upon grounds that admit of clearer definition.

We will return now to the complainant's bucket and the claim that the inventor added to a water-wheel bucket of the divided wedge type a front wall with rounded corners prolonged beyond the wedge point, and let us see how far we can give effect to this claim. The rounded corners prolonged beyond the wedge point have reference to that part of the second claim of the patent which describes the bucket or its curved bottom as having its discharges below the line of impact. This is the form of the bucket which carries out the inventor's theory of a downward discharge of the water in a natural curve, but in practice the form of the interior cavity of the bucket does not carry out this theory, for the reason that the bucket in its revolution with the wheel is constantly presenting a different part of its cavity to the stream. The result is that each of these buckets discharges to some extent on all three sides. When the bucket first enters the jet or stream, the water is necessarily driven upwards, and is discharged over the upper side or corner and above the line of impact. When the bucket is revolving in the stream, and receives the water in a direct line, some of the water at least must be driven over the sides, and the discharge is parallel with the line of impact. As the bucket leaves the stream, it receives the water in a downward direction, and the discharge is over the lower side and below the line of impact. This is the practical operation of all buckets attached to a revolving wheel. The most that can be claimed is that the interior cavity of a bucket may be so changed that a little more water may be directed downwards than upwards or over the sides, and in this respect differ from

the operation of some other bucket. It would be impossible, in the present state of the art, to construct a bucket that would direct all the water of the stream downwards. · But, whatever the improvement may be in the complainant's bucket in this particular, it does not appear to have been appropriated by the defendant's bucket, with its modified curves of an ellipsoidal form, as shown by the exhibits introduced in evidence. The discharges of the defendant's buckets are over the upper end, over the sides, and downward, as the revolving bucket changes its position with respect to the stream, and there does· not appear to have been any effort to so form the interior cavity of the bucket that the greater part of the discharge would be downward. There is no such function performed by defendant's device. The purpose of this bucket, with respect to the element under consideration, was to present such curves to the stream that the water would flow smoothly and without shock throughout its whole interior cavity.

The next feature of complainant's bucket is the sigmoidal front wall. It is claimed that the defendant's bucket contains this wall, or at least a section of it, answering. the same purpose; but it is plain that it is not to be found there in any form shown in the complainant's patent, and whatever function it performs there is nothing in defendant's bucket that performs that function. There is in the defendant's device a section of a wall at the lower end of the bucket precisely the same as there is at other sides, but below the wedge or splitter it is cut away to admit the stream into the cavity of the bucket over the central wedge without the shock and disturbance caused by the entering lip. This is claimed as one of defendant's improvements in the art of constructing an effective water-bucket; but whether it is so or not is immaterial. The question is whether the defendant has appropriated the complainant's invention of a sigmoidal wall. As before stated, we are not at liberty to give this feature of complainant's device a broad construction. It has a well-defined form, and performs a specified function. The defendant's bucket has a distinctly different form and performs another and a different function.

It follows that in my opinion no infringement of complainant's patent has been shown, and the bill must be dismissed.